STATE OF NORTH CAROLINA v. JOHNAS BELL

No. 44

(Filed 12 December 1973)

1. **Burglary and Unlawful Breakings § 1— burglary defined**
   Burglary is the breaking and entering during the nighttime of an occupied dwelling or sleeping apartment with intent to commit a felony therein. G.S. 14-51.

2. **Burglary and Unlawful Breakings § 2— breaking or entering — lesser offense of burglary**

   The statutory offense of breaking or entering defined by G.S. 14-54(a) is a lesser included offense of burglary in the first degree.

3. **Criminal Law § 115— necessity for submitting lesser included offense**

   When there is some evidence supporting a lesser included offense, a defendant is entitled to a charge thereon even where there is no specific prayer for such instruction, and error in failing to do so will not be cured by a verdict finding defendant guilty of a higher degree of the same crime.

4. **Burglary and Unlawful Breakings § 7— burglary — failure to submit felonious breaking or entering**

   In this prosecution for first degree burglary, the trial court erred in failing to submit to the jury the lesser included offense of felonious breaking or entering where the evidence and the inferences to be reasonably drawn therefrom would not have required the jury to find that defendant entered the dwelling by a burglarious breaking.

APPEAL by defendant from *Collier, J.,* 13 February 1973 Session of FORSYTH. Defendant was charged in a bill of indictment with burglary in the first degree. He entered a plea of not guilty.

The State's evidence tended to show that Bonnie Lewis Whicker shared a room with her sister on the third floor of the Julia Higgins Cottage at the Children's Home located on Reynolda Road in Winston-Salem, North Carolina. The sisters retired about 10:00 p.m. on the night of 26 May 1971. Later that night or in the early morning hours of 27 May 1971, Bonnie Lewis Whicker was awakened, and realizing that someone was in her bed, screamed. A man who was lying in the bed with her put a knife to her throat and told her he would cut her throat if she screamed again. Other girls in the cottage were awakened and came to the door of the room. One of the girls turned on the lights in the room and all the girls who had gathered at the Whickers' room began screaming. The man on the bed pulled up his pants, ran from the room, down the stairs, and out of the cottage.

Miss Janice Chamberlin testified, in part, that she lived in the room next to the Whicker girls. On the evening of 26 May 1971 she had been "baby-sitting" and returned to the cottage at about 9:30 p.m. She entered the cottage through the front door, which was open. She thought that she was the last one in but she did not lock the door. Miss Chamberlin was one of the persons awakened by Bonnie's screams. When the lights

were turned on, she saw defendant sitting on the bed with a knife to Bonnie's throat. Miss Chamberlin ran down the stairway and defendant came directly behind her and "went out the living room window." On the cross-examination she testified that Miss Weaver, who was in charge of the cottage, generally locked the front door at approximately 9:30 p.m. There were three or four more doors to the cottage which were unlocked during the daytime and locked at night.

William R. Edwards, Superintendent of the Children's Home, testified that he was awakened by police car sirens and observed people at the Julia Higgins Cottage. Upon his arrival, he saw that the window screen to the left of the front door had a slit in it and the screen to the right of the door was completely pushed out. It appeared to him that someone had gone through the screen to the right of the door.

W. M. Reavis of the Forsyth County Police Department testified that the window screen to the right of the door was completely knocked out and that the screen to the left of the door was unlatched and had a slit in it.

Bonnie Lewis Whicker, Lou Ann Whicker and Janice Chamberlin each made an in-court identification of defendant as the man they saw on Bonnie Whicker's bed.

Defendant offered no evidence.

The jury returned a verdict of guilty of first degree burglary. Defendant gave notice of appeal from judgment imposing a life sentence but failed to perfect his appeal within the time allowed. We allowed defendant's Petition for Writ of Certiorari to Forsyth County Superior Court on 3 July 1973.

*Attorney General Robert Morgan by Assistant Attorney General Millard R. Rich, Jr. for the State.*

*John J. Schramm, Jr. for the defendant appellant.*

BRANCH, Justice.

The single question presented for decision is whether the trial judge erred by failing to submit to the jury the lesser included offense of felonious breaking or entering.

[1] Burglary in the first degree is the breaking and entering during the nighttime of an occupied dwelling or sleeping apart-

ment with intent to commit a felony therein. G.S. 14-51; *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785.

G.S. 14-54(a) provides: "Any person who breaks or enters any building with intent to commit any felony or larceny therein is guilty of a felony and is punishable under G.S. 14-2."

**[2, 3]** The statutory offense of felonious breaking or entering defined by G.S. 14-54(a) is a lesser included offense of burglary in the first degree. *State v. Fikes,* 270 N.C. 780, 155 S.E. 2d 277; *State v. Perry,* 265 N.C. 517, 144 S.E. 2d 591. When a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser, all of which could be proved by proof of the allegations in the indictment. Further, when there is some evidence supporting a lesser included offense, a defendant is entitled to a charge thereon even when there is no specific prayer for such instruction, and error in failing to do so will not be cured by a verdict finding defendant guilty of a higher degree of the same crime. *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535; *State v. Childress,* 228 N.C. 208, 45 S.E. 2d 42; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44.

If defendant entered the Julia Higgins Cottage with intent to commit a felony other than by a burglarious breaking, he would be guilty of felonious breaking or entering as defined by G.S. 14-54(a). *State v. Brown,* 266 N.C. 55, 145 S.E. 2d 297.

In the case of *State v. Chambers,* 218 N.C. 442, 11 S.E. 2d 280, the defendant was charged with first degree burglary. The evidence tended to show that defendant unlawfully entered a dwelling house and committed the felony of rape therein. The window in the room in which the felony was committed was open, and the defendant was first observed in that room. The defendant made his escape through the open window. There was circumstantial evidence tending to show that the entry was made by opening another window of the dwelling. This Court held that it was reversible error not to submit to the jury the question of the defendant's guilt of non-burglarious breaking or entering.

**[4]** In instant case, there was evidence that the last person known to enter the dwelling found the front door open and "she did not lock the front door." The evidence does not show whether

she closed the door or left it ajar. There were several doors to the cottage which ordinarily were unlocked during the day and locked at night. There was no direct evidence as to whether these doors had been locked on the night of the 26th of May 1971. There was evidence that the screen on the left of the front door was slit and unlatched. The evidence does not establish whether the window was open or whether the "slit" was large enough for a person to enter. Nor is there any evidence establishing when the screen was unlatched or when the slit was made. Likewise there is no direct conclusive evidence to show when the screen on the right of the front door was pushed out or when or how defendant entered the dwelling.

The evidence in the case and the inferences to be reasonably drawn therefrom were not such as would have *required* the jury to find that defendant entered the Julia Higgins Cottage by a burglarious breaking. Conversely the jury might reasonably have inferred that defendant made his entry without a burglarious breaking.

Under these circumstances, defendant was entitled " . . . to have different views arising on the evidence presented to the jury upon proper instructions. . . . " *State v. Childress, supra.*

For failure to charge on the offense of non-burglarious breaking or entering, there must be a

New trial.